UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHANNA GLENN,

                                        Plaintiff,

v.

KALEIDA HEALTH,

                                        Defendant.
_____

**REPORT and RECOMMENDATION**

17-CV-0025-LJV-JJM

        Before the court are defendant's motion to dismiss plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [11],[1] and plaintiff's cross-motion for leave to file a Second Amended Complaint [13] pursuant to Rule 15(a)(2), which have been referred to me for the preparation of a Report and Recommendation [7]. Having reviewed the parties' submissions [11, 13, 15, 16], I recommend that the motions be granted in part and denied in part.

**BACKGROUND**

        Plaintiff commenced this action against her former employer, defendant Kaleida Health ("Kaleida"), alleging causes of action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12101 *et seq.* Complaint [1]. In response to the Complaint, Kaleida moved to dismiss plaintiff's Title VII claims for failure to state a cause of action, and her ADA claims for failure to exhaust her administrative remedies. Kaleida's Memorandum of Law [5-2]. Rather than opposing that motion, plaintiff filed an Amended Complaint [9] alleging causes of action for race discrimination and retaliation in violation of Title VII and 42 U.S.C. §1981, but removed her

---

[1]     Bracketed references are to the CM/ECF docket entries.

ADA claims. In response, Kaleida withdrew its initial motion to dismiss (April 7, 2017 Text Order) and filed its current motion to dismiss [11] directed at the Amended Verified Complaint. Plaintiff opposes that motion and cross-moves for leave to file a Second Amended Complaint, which adds disability discrimination and retaliation claims pursuant to the ADA and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§290 *et seq*., that were the subject of a recent right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). *See* Proposed Second Amended Complaint [13-3], Fifth – Eighth Causes of Action.

The Amended Complaint [9] alleges that plaintiff, a Caucasian, began her employment with Kaleida in September 2014 as a Certified Medical Assistant. Id., ¶¶8-9. She alleges that her "primary harassers" were her co-workers Nicole Oates and Danyelle Grey, [2] both of whom were African American, and were hostile towards her because of her race and her marriage to an African American. Id., ¶¶8, 13, 15. Ms. Oates and Ms. Grey allegedly made "frequent harassing comments about Plaintiff's race and her marriage to her African American husband and engaged in other physical actions over the entire course of Plaintiff's employment that caused Plaintiff to dread coming to work". Id., ¶16. Alleged examples of their conduct included stating to plaintiff and others that "[p]laintiff thought she was a black girl and tried to talk like one" (id., ¶17) and asking a co-worker if plaintiff gave her an "'I'm with a black man' attitude or an 'I'm white girl' voice" (id., ¶18). In or about June 2015, a third African American co-worker, Bridget Camp, also allegedly stated that plaintiff "would fit into the city [of] Shubuta, Mississippi, which is known for a notorious 'hanging bridge' because [she] is Caucasian". Id., ¶19.

---

[2]   At times, she is also identified as Ms. Gray. *See, e.g.,* Amended Verified Complaint [9], ¶¶24, 25.

In addition to these comments, Ms. Oates or Ms. Grey allegedly took plaintiff's exception log in July 2015 (id., ¶28), smeared the inside of her lunch container with butter in August 2015 (id., ¶29), and falsely accused her of not performing a medical test in August 2015. Id., ¶30. Plaintiff allegedly made "numerous internal complaints to [Kaleida] throughout her employment regarding the discrimination and harassment", but was retaliated against by Kaleida for those complaints in August 2015, when she received "a corrective action for absences . . . due to her disability" that were intentionally not listed correctly by Kaleida "in order to create a paper trial to fire her". Id., ¶¶31, 34.

Plaintiff also allegedly "suffered from a disabling condition that caused her to miss work on occasion and required her to work light duty at times". Id., ¶23. Ms. Oates and Ms. Grey allegedly accused her of "faking her disability and saying that she should not be on light duty". Id., ¶25. In October 2015 Kaleida allegedly ceased accommodating her disability, "even though her Worker's Compensation case was not closed" and it had "successfully accommodated [her] for nearly five months", which required her to use her unpaid FMLA time. Id., ¶¶36, 37. While on disability leave, plaintiff filed a Complaint with the NYSDHR on March 10, 2016, alleging race discrimination. Id., ¶38. When plaintiff returned to work in April 2016, she allegedly "returned to a hostile work environment just as before". Id., ¶¶39-40. Plaintiff continued her employment until October 21, 2016, when she was allegedly falsely fired for a "no call no show" absence. Id., ¶¶41-44.[3]

---

[3]   Plaintiff's proposed Second Amended Complaint slightly expands upon allegations related to her proposed ADA and NYSHRL claims.

## ANALYSIS

A.     **Kaleida's Motion to Dismiss the Amended Complaint**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. With this standard in mind, I will address each of plaintiff's claims.

### 1. Title VII Claims

The Amended Complaint alleges causes of action for hostile work environment and disparate treatment based on plaintiff's race and her association with an individual of a different race (Amended Verified Complaint [9], First Cause of Action), and retaliation because of complaints about such discrimination, in violation of Title VII. Id., Second Cause of Action.

#### a. Is Any of the Alleged Conduct Untimely?

"In New York, a claim under Title VII must be either filed with the EEOC or dual-filed with a state or local agency within 300 days of the alleged unlawful employment practice." Harper v. NYC Administration for Children's Services, 2010 WL 23328, *2 (S.D.N.Y. 2010). "42 U.S.C. § 2000e–5(c) . . . gives the state or local agency an exclusive opportunity to resolve the complaint and requires the EEOC to defer any action on its part" for

-4-

60 days. Bagley v. Yale University, 42 F. Supp. 3d 332, 341 (D. Conn. 2014). Thus, "Title VII claims cannot be 'filed' with the EEOC until 60 days after the date that proceedings are begun with the state agency, 'unless such proceedings have been earlier terminated.' 42 U.S.C. §2000e–5(c)." Feldman v. New York Blood Center, Inc., 2002 WL 31769700, *5 (S.D.N.Y. 2002).

Kaleida relies on that 60-day deferral period to argue that plaintiff's NYSDHR complaint was not filed with the EEOC until May 9, 2016 (60 days after it was filed with the NYSDHR on March 10, 2016), and that 300 day period runs from that date, rather than when it was filed with the NYSDHR. Kaleida's Memorandum of Law [11-2], p. 6. Complaint [9], ¶5. That argument is unpersuasive. "Under a Work Sharing Agreement between the EEOC and the NYSDHR, the NYSDHR has been designated as an agent of the EEOC for the receipt of charges; for purposes of the statute of limitations, the date of filing with the NYSDHR is identical with the date for filing with the EEOC." Hull v. Nyack Hospital, 2014 WL 3427235, *3 (S.D.N.Y. 2014); Nieman v. Syracuse University Office of Human Resources, 2013 WL 2445098, *3 (N.D.N.Y. 2013) ("based upon a worksharing agreement between the EEOC and the NYSDHR, charges received by the [NYSDHR] are automatically deemed dual-filed with the EEOC"). Thus, "a plaintiff typically has 300 days after the alleged discriminatory act to file a charge with either the EEOC or the NYSDHR". Hull, 2014 WL 3427235 at *3. Therefore, I conclude that all of the alleged conduct occurring since May 15, 2015 (300 days prior to March 10, 2016) is actionable. Moreover, as plaintiff argues - and Kaleida fails to dispute - even alleged conduct occurring prior to May 15, 2015 may be deemed timely for plaintiff's hostile work environment claim under the continuing violation theory. Plaintiff's Memorandum of Law [13-1], pp. 8-9.

To the extent that the Amended Complaint does not clearly plead whether certain alleged conduct occurred prior to May 15, 2015 (*e.g.*, Amended Complaint [9], ¶18 ("early in Plaintiff's employment, Ms. Oates and Ms. Grey asked another co-worker . . . whether Plaintiff gave her an 'I'm with a black man' attitude or an 'I'm a white girl' voice")), the timeliness of those allegations, including plaintiff's reliance on the continuing violation theory (plaintiff's Memorandum of Law [13-1], pp. 8-9), may be challenged, following discovery.

### b. Can the Alleged Discrimination be Considered to be Because of Race?

"It is axiomatic that mistreatment at work is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). Kaleida argues that plaintiff "fails to plausibly allege discrimination because of plaintiff's Caucasian race", since her "race is not the only one commented on". Kaleida's Memorandum of Law [11-2], pp. 5-6. I disagree.

Plaintiff alleges that the discrimination occurred "due to [her] race and because she had an African American husband". Amended Verified Complaint [9], ¶26. Thus, it is not surprising that both races were mentioned in some of the alleged comments, and it is well established that "an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race." Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008); Christiansen v. Omnicom Group, Inc., 852 F.3d 195, 204 (2d Cir. 2017). "The reason is simple: where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race." Holcomb, 521 F.3d at 139 (emphasis in original).

### c.  Has Plaintiff Sufficiently Alleged a Disparate Treatment Claim?

"Analyzing a motion to dismiss an employment discrimination claim requires reference to the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in which the Supreme Court set forth a burden-shifting scheme which governs a plaintiff's ultimate burden of proof at trial." Thomson v. Odyssey House, 2015 WL 5561209, *5 (E.D.N.Y. 2015). Under that scheme, the plaintiff must make out a prima face case "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation". Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015).

"To survive a motion to dismiss, a Title VII plaintiff does not have to plead a full prima facie case . . . she need only give plausible support to a minimal inference of discriminatory motivation." Carris v. First Student, Inc., __ Fed. Appx. __, 2017 WL 946741, *1 (2d Cir. 2017) (Summary Order); Vega v. Hempstead Union Free School District, 801 F.3d 72, 84 (2d Cir. 2015). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Littlejohn, 795 F.3d at 312.

Plaintiff does not dispute Kaleida's arguments that the Amended Complaint does not allege that the co-workers responsible for the alleged hostile work environment were involved in the decision to terminate her or the decision to impose any other adverse

-7-

employment actions (Kaleida's Memorandum of Law [11-2], p. 7),[4] or that Kaleida treated plaintiff differently from similarly situated co-workers not in her protected group. Id., pp. 8-9.[5] Nor does plaintiff point to any other circumstance establishing that a minimal inference of discriminatory motivation existed for the adverse employment actions Kaleida allegedly took against her.

At most, plaintiff argues - in a heading without any legal or factual development - that Kaleida's "disparate treatment of Plaintiff manifested itself in its apparent consent to the hostile work environment . . . and the retaliation that was only perpetuated against [her] after she complained of harassment, while nobody else was even disciplined". Plaintiff's Memorandum of Law [13-1], p. 9. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Moreover, the Amended Complaint attributes the apparent adverse employment actions – plaintiff's termination and August 2015 corrective action - to retaliation for her complaints, not to discrimination because of her race. See Amended Complaint [9], ¶¶33-34, 45. Therefore, I recommend that this portion of Kaleida's motion be granted.

---

[4]      See Joseph v. Owens & Minor Distribution, Inc., 5 F. Supp.3d 295, 310 (E.D.N.Y. 2014), aff'd, 594 Fed. App'x 29 (2d Cir. 2015) (Summary Order) ("[a]ssuming that Davis made these comments . . . these comments by a colleague are not sufficient to establish an inference of discrimination with respect to Plaintiff's termination . . . . [A]bsent any evidence that Davis was involved in the decision to terminate Plaintiff, any racial bias . . . on the part of Davis cannot be attributed to the actions of the decision-maker who terminated Plaintiff").

[5]      See Sanderson v. N.Y. State Electric & Gas Corp., 560 Fed. App'x 88, 93 (2d Cir. 2014) (Summary Order) (concluding that there was no inference of discrimination where plaintiff did not allege "that similarly situated male co-workers who declined to return to work following an order to return were treated differently. Instead, she relies on the same allegations of harassment she proffered in support of her hostile work environment claim, as well as the fact that . . . she was the only worker who was required to accept reassignment to the day shift").

### d. Has Plaintiff Sufficiently Alleged a Hostile Work Environment Claim?

Whereas disparate treatment claims address "discrete harms such as hiring or discharge, a hostile work environment claim analyses a workplace environment as a whole to discover whether it is 'abusive'". Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001). "[T]he criteria for establishing a disparate treatment claim . . . which employs the McDonnell Douglas burden shifting analysis, are different than those for a hostile work environment claim, which does not." Kirkland v. Office of the Mental Health of the State of New York, Buffalo Psychiatric Center, 2016 WL 7974151, *16 (W.D.N.Y. 2016), adopted, 2017 WL 356654 (W.D.N.Y. 2017) (Vilardo, J.)).

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive - that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." Patane, 508 F.3d at 113. For an employer to be held liable for a hostile work environment, the plaintiff must demonstrate that "that the employer knew or reasonably should have known about harassment by non-supervisory co-workers, yet failed to take appropriate remedial action". Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 153 (2d Cir. 2014).

In seeking dismissal of this claim, Kaleida argues that plaintiff fails to allege objectively severe or pervasive conduct, pointing to the fact that she only alleges that three race-based comments were made over a nine-month period. Kaleida's Memorandum of Law [11-2], p. 10. That argument fails for several reasons. First, Kaleida ignores that the alleged comments were only cited as examples (Amended Complaint [9], ¶¶17, 18), and that Ms. Oates and Ms.

Grey allegedly made "*frequent* harassing comments about Plaintiff's race and her marriage to her African American husband" (id., ¶16, emphasis added).  Second, Kaleida ignores plaintiff's allegation that the hostile conduct was not limited to comments, and included Ms. Oates and Ms. Grey "escalat[ing] minor incidents just to harass [her]".  Id., ¶21.  *See* Alvarado v. Nordstrom, Inc., __ Fed. Appx.__, 2017 WL 1175654, *1 (2d Cir. 2017) (Summary Order) ("[e]ven a single incident of verbal harassment may be sufficient to indicate that further harassment by that co-worker was based on the protected characteristic and thus contributed to a hostile work environment"); Raniola, 243 F.3d at 622 ("derogatory comments by a co-worker may permit an inference that further abusive treatment by the same person was motivated by the . . . bias manifested in the earlier comments").  Moreover, Kaleida ignores plaintiff's allegation that in April 2016, she "returned to a hostile work environment just as before where the same types of things . . . were said and done to her on almost every shift".  Amended Verified Complaint [9], ¶40.

        Alternatively, Kaleida argues that plaintiff fails to allege facts sufficient to impute the conduct of her co-workers to Kaleida itself.  Kaleida's Memorandum of Law [11-2], p. 12.  This too is belied by the allegations of the Amended Complaint ([9], ¶¶31-32 ("[p]laintiff made numerous internal complaints to Defendant throughout her employment regarding the discrimination and harassment", including complaining to "nurse manager, Ellen Eckardt and to RN Supervisors" and "Ellen in Human Resources")) and the attached NYSDHR Complaint. [9-1], ¶¶12-14.  Therefore, I recommend that this portion of Kaleida's motion be denied.

   **e.**  **Has Plaintiff Sufficiently Alleged a Retaliation Claim?**

   Retaliation claims under Title VII are also analyzed pursuant to the <u>McDonnell Douglas</u> burden-shifting evidentiary framework. *See* <u>Littlejohn</u>, 795 F.3d at 315. "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." <u>Id</u>. at 315-16. "[T]he allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under <u>McDonnell Douglas</u> in the initial phase of a Title VII litigation." <u>Id</u>. at 316.

   Kaleida argues that the Amended Complaint fails to "allege facts to show a causal connection between any alleged complaints to management or the filing of her NYSDHR complaint in March 2016 and her termination . . . in October 2016". Kaleida's Memorandum of Law [11-2], p. 13. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant". <u>Gordon v. New York City Board of Education</u>, 232 F.3d 111, 117 (2d Cir. 2000). For a causal connection to be established by temporal proximity, the period must be "very close". <u>Clark County School District v. Breeden</u>, 532 U.S. 268, 273 (2001). However, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action". <u>Gorman-Bakos v. Cornell Co-op Extension of Schenectady County</u>, 252 F.3d 545, 554 (2d Cir. 2001).

While Kaleida argues that the six month interval between plaintiff's NYSDHR Complaint and her termination is too attenuated, the Second Circuit has "upheld an inference of a causal connection based on lapses of up to eight months between the protected activity and the alleged retaliatory actions". Caputo v. Copiague Union Free School District, 218 F.Supp.3d 186, 194–95 (E.D.N.Y. 2016). *See* Summa v. Hofstra University, 708 F.3d 115, 128 (2d Cir. 2013) ("seven months is within the temporal range that we have found sufficient to raise an inference of causation"). Plaintiff also alleges that her retaliatory termination occurred when Kaleida first "had the chance to retaliate against her". Amended Complaint [9], ¶45. *See* Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (a plaintiff sufficiently alleged a causal connection between his lawsuit against prison guards and an alleged retaliatory assault by prison guards six months after the dismissal of the suit, because "[i]t [was] plausible that the officers waited to exact their retaliation at an opportune time - as when Espinal was involved in a fight with another inmate - in order to have a ready explanation for any injuries suffered by Espinal").

Moreover, while Kaleida relies on plaintiff's NYSDHR Complaint as the protected action, "[a] protected activity does not have to rise to the level of a formal complaint and includes complaints to management, writing critical letters and expressing support for co-workers". Kretzmon v. Erie County, 2013 WL 636545, *5 (W.D.N.Y. 2013); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990). Therefore, plaintiff's allegation that "*throughout her employment*" she made numerous internal complaints regarding discrimination and harassment (Amended Complaint [9], ¶31 (emphasis added), reasonably suggests that the temporal proximity between plaintiff's protected activity and termination may be shorter than six months. Moreover, the alleged adverse actions which plaintiff experienced were not limited to her termination: plaintiff also alleges that she received a "corrective action" as retaliation for her

complaints. Amended Complaint [9], ¶¶33-34. *See* Millea v. Metro-North Railroad Co., 658 F.3d 154, 165 (2d Cir. 2011) (concluding that a letter of reprimand may constitute an adverse action for purposes of a retaliation claim); St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 326 (E.D.N.Y. 2014).

Kaleida further argues that plaintiff cannot establish "but for" causation, since she also alleges that she was terminated for reasons related to her disability. Kaleida's Memorandum of Law [11-2], p. 14. However, "[r]equiring proof that a prohibited consideration was a 'but-for' cause of an adverse action does not equate to a burden to show that such consideration was the 'sole' cause". Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 846 n. 5 (2d Cir. 2013). Thus, "a plaintiff's injury can have multiple 'but-for' causes, each one of which may be sufficient to support liability". Id. Therefore, I recommend that this portion of Kaleida's motion be denied.

### 2. 42 U.S.C. §1981 Claims

The Amended Complaint [9] alleges causes of action pursuant to 42 U.S.C. §1981 (id., Third and Fourth Causes of Action), but in response to Kaleida's motion to dismiss, plaintiff concedes that those causes of action may be dismissed. Plaintiff's Memorandum of Law [13-1], p. 3 n.2. Therefore, I recommend that this portion of Kaleida's motion be granted.[6]

### B. Plaintiff's Cross-Motion for Leave to File a Second Amended Complaint

Plaintiff's cross-motion is governed by Rule 15(a)(2), which provides that a court "should freely give leave [to amend] when justice so requires". "Although the rule requires that leave should be granted freely, it is within the sound discretion of the court whether to grant

---

[6] Although those causes of action inadvertently remained in the proposed Second Amended Complaint, plaintiff acknowledges that they may be removed. Plaintiff's Reply Memorandum of Law [16], p. 2, n. 1.

leave to amend." John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). In opposing plaintiff's cross-motion for leave to file a Second Amended Complaint, Kaleida primarily argues undue delay and futility. Kaleida's Reply Memorandum of Law [15], pp. 11-16. Neither argument is persuasive.

**1. Was there Undue Delay in Moving to File the Second Amended Complaint?**

Plaintiff only recently exhausted her newly added claims when she received a right to sue letter from the EEOC on April 19, 2017. Sanders Declaration [13-2], ¶5. Even though plaintiff should have exhausted those claims before they were initially asserted in the Complaint, I find no merit to Kaleida's contention that there has been undue delay.

**2. Are the Proposed Newly Added Disability Discrimination Claims Futile?**

An amendment "is considered a 'futile' act when the proposed claim would not withstand a motion to dismiss under Rule 12(b)(6)". Trowell v. Upstate Correctional Facility, 2016 WL 7156559, *2 (N.D.N.Y. 2016). "In order to establish a prima facie case of employment discrimination under the ADA . . . a plaintiff must adequately plead that he was terminated because of a qualifying disability." Smith v. Hogan, 794 F.3d 249, 253 (2d Cir. 2015).

**a. ADA Claims**

Plaintiff's ADA claims are contained in the Fifth and Sixth Causes of Action of the proposed Second Amended Complaint [13-3]. Kaleida notes that the content of those causes

of action, other than the paragraph references (id., ¶¶64, 70), are identical. Kaleida's Reply Memorandum of Law [15], p. 13. Since plaintiff offers no explanation for this duplication, any amendment to add an ADA claim will be limited to the Fifth Cause of Action of the proposed Second Amended Complaint.

Next, Kaleida argues that plaintiff fails to allege that she suffers from a qualifying disability. Under the ADA, an individual is disabled if she has a "physical . . . impairment that substantially limits one or more major life activities", "a record of such impairment", or is "regarded as having such an impairment ". 42 U.S.C. §12102(1). Major life activities "include, but are not limited to . . . lifting . . . and working". Id. §12102(2)(A). Courts are instructed to construe the definition of disability "in favor of broad coverage". Id. §12102(4)(A).

In addition to generally alleging that she was "disabled within the meaning of the ADA" (proposed Second Amended Complaint [13-3], ¶65), plaintiff also alleges that she sustained a shoulder injury at work on or about May 30, 2015 (id., unnumbered paragraph between ¶¶6 and 7), that it was a "disabling condition" (id., ¶23), that she was "not always able to physically perform some of her duties due to her disability" (id., ¶24), and that she was placed on light duty for five months before taking unpaid FMLA leave for approximately six months thereafter as a result of her disability. Id., ¶¶24, 36-39. "Nothing [alleged] suggests that Plaintiff's impairment was not substantially limiting." Urena v. Swiss Post Solutions, Inc., 2016 WL 5173389, *5 (S.D.N.Y. 2016). Therefore, I conclude that these allegations are sufficient at this stage of the case. See Rice v. Wayne Behavioral Health Network, 2010 WL 811325, *4 (W.D.N.Y. 2010) ("plaintiff's allegation of suffering from a disability, or being perceived as suffering from a disability, sufficiently pleads that element of a cause of action for

discrimination. Whether or not his alleged disabilities constitute disabilities under the ADA is a question not ripe for adjudication at this stage of the proceeding"); Pollard v. Lawrence & Memorial Hospital, Inc., 2015 WL 3505705, *6 (D. Conn. 2015) (although the plaintiff did not specifically plead limitations of major life activities, the court held that the plaintiff sufficiently pled a substantial limitation to a major life activity where she alleged "that she tore tendons in her ankle and that her doctor recommended physical therapy, time off from work, and possible surgery").

While plaintiff relies upon Hardy v. Pepsi Bottling Co. of N.Y., Inc., 2016 WL 1301181 (S.D.N.Y. 2016), aff'd, __Fed. Appx.__, 2017 WL 1944155 (2d Cir. 2017) (Summary Order), the circumstances of that case are readily distinguishable. There, the court was addressing a summary judgment motion, where the plaintiff "admitted during his deposition that he was not disabled . . . and admitted that he had no lingering restrictions on his ability to perform critical work functions by the time he returned to work". Id. at *5. I conclude that plaintiff's allegations, which at this stage must be accepted as true, are sufficient to show a substantial limitation to a major life activity.

Kaleida also argues that plaintiff fails to allege a retaliation claim under the ADA, since her protected activity, the filing of her NYSDHR Complaint alleging disability discrimination, did not occur until April 2017, after her termination. Kaleida's Reply Memorandum of Law [15], p. 15. However, as plaintiff notes, liberally interpreting the proposed Second Amended Complaint, her ADA retaliation claim stems "from her requests for accommodation just days before her termination" (plaintiff's Reply Memorandum of Law [16], p. 7), which constitutes a protected activity. *See* Nieblas-Love v. New York City Housing

Authority, 165 F. Supp. 3d 51, 75 (S.D.N.Y. 2016) ("requesting an accommodation under the ADA is [a] protected activity for purposes of making out a *prima facie* case").

Kaleida further argues that any facts that are alleged to have occurred "more than 300 days prior to the filing of her EEOC charge . . . are untimely and cannot be considered in support of plaintiff's ADA claims". Kaleida's Reply Memorandum of Law [15], p. 13. In response, plaintiff concedes that she "cannot bring an ADA claim for actions that occurred more than 300 days prior to the filing of her EEOC charge". Plaintiff's Reply Memorandum of Law [16], p. 8. Therefore, I recommend that this portion of plaintiff's motion be granted, except to the extent that it seeks to add the Sixth Cause of Action of the proposed Second Amended Complaint and relies on conduct that occurred more than 300 days prior to the filing of the EEOC charge in support of the Fifth Cause of Action of the proposed Second Amended Complaint.

### b. NYSHRL Claims

Kaleida argues that plaintiff's proposed NYSHRL disability discrimination and retaliation causes of action fail to state a claim, since "they are construed under the same standards as their federal counterparts". Kaleida's Reply Memorandum of Law [15], p. 15. For the reasons discussed above, I conclude that the proposed NYSHRL claims are not facially deficient.

Alternatively, Kaleida argues that plaintiff's proposed NYSHRL claims (proposed Second Amended Complaint [13-3], Seventh and Eighth Causes of Action) must be dismissed as futile, since they are barred by her election to proceed with these claims administratively before the NYSDHR. Kaleida's Reply Memorandum of Law [15], pp. 15-16. "It is well settled that a party that files a claim with the [NYSDHR] is precluded from bringing a civil action based on

the same claims unless the administrative claim was dismissed on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled." Heiser v. Collorafi, 2015 WL 1039661, *2 (N.D.N.Y. 2015) (*citing* N.Y. Exec. Law §297(9)). Kaleida notes that plaintiff has failed to allege that such dismissal occurred. Kaleida's Reply Memorandum of Law [15], p. 16.

However, there is no indication that a charge was filed with any entity other than the EEOC. *See* proposed Second Amended Complaint [13-3], ¶6. Nor is there anything before me to indicate that the NYSDHR opened a file on the matter or conducted any investigation. "Since there is no indication in this case that the DHR ever received the complaint or opened a file, the court finds that plaintiff's claims under the NYSHRL . . . are not barred by the doctrine of election of remedy." Presser v. Key Food Stores Co-op, Inc., 2002 WL 31946714, *3 (E.D.N.Y. 2002), aff'd., 316 Fed. App'x. 9 (2d Cir. 2009) (Summary Order); Heiser, 2015 WL 1039661, *3. Therefore, I recommend that this portion of plaintiff's motion be granted.

### 3.   Are There Other Reasons Why Leave Should Not be Granted?

Apart from Kaleida's undue delay and futility arguments, it contends that granting leave would be contrary to the interest of justice, since its motion to dismiss "would likely be withdrawn, and a new filing would be necessary". Kaleida's Reply Memorandum of Law [15], p. 10. However, as plaintiff argues, "there is no reason why the Court cannot rule on [its] motion to dismiss her first amended complaint, which includes all of the race-based claims and at the same time decide whether to grant leave to amend to include [her] disability-based claims". Plaintiff's Reply Memorandum of Law [16], p. 2.

Kaleida also argues that the court should not address plaintiff's "informal request to amend". Kaleida's Reply Memorandum of Law [15], p. 11. Yet Kaleida fails to identify (nor

-18-

is it apparent) what is deficient with the motion, which is accompanied by a notice of cross motion [13], supporting Memorandum of Law [13-1], Declaration [13-2], and proposed Second Amended Complaint [13-3].  *Compare with* Springcrest Partners, LLC v. Admiral Insurance Co., 2013 WL 1197780, *4 n. 3 (N.D. Tex. 2013) (declining to treat an informal request for leave to amend as a motion, where the request was "added at the end of the response [to the motion to dismiss] as an afterthought").

## CONCLUSION

For these reasons, I recommend that Kaleida's motion to dismiss [11] be denied, except to the extent that it seeks dismissal of plaintiff's Title VII disparate treatment and 42 U.S.C. §1981 claims, and that plaintiff's cross-motion for leave to file a Second Amended Complaint be granted [13], except to the extent the proposed Second Amended Complaint includes the dismissed causes of action and the Sixth Cause of Action, and relies on conduct that occurred more than 300 days prior to the filing of the EEOC charge in support of the Fifth Cause of Action.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by July 21, 2017.  Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.  Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:  July 7, 2017

        /s/ Jeremiah J. McCarthy
        JEREMIAH J. MCCARTHY
        United States Magistrate Judge